IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Kelly Tevlin, | NO. C 06-06706 JW |
|         Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
|    v. | |
| James E. Tilton, | |
|         Respondent. | |

## I. INTRODUCTION

This matter is now before the Court for consideration of Kelly Tevlin's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 concerning his 2003 sentencing of an indeterminate term of 48 years to life in the Napa County Superior Court for continuous sexual abuse of a minor.[1] For the reasons set forth below, the petition is DENIED as to all claims.

## II. BACKGROUND

**A.  Facts**

In 1990, Petitioner was convicted of two counts of committing lewd acts upon a child, his step-daughter. (Appeal at 2.) He was sentenced to five years in prison, and released on parole in 1993. (Id.) In 1995, Petitioner violated his parole and was sent back to prison for an additional year. (Id.) Upon his release, Petitioner moved into the home of his sister and her children. (Id.) Shortly thereafter, Petitioner began to molest his young niece approximately every other day for a

---

[1] (Petition for Writ of Habeas Corpus and Memorandum of Points and Authorities in Support, hereafter, "Petition," Docket Item No. 1.)

two-year period, during 1996 and 1997. (Id.) Petitioner also allegedly molested his niece again in 2002.

On November 5, 2002, an Amended Information was filed charging Petitioner with one count of committing a lewd act upon a child in violation of California Penal Code ("PC") § 288(c)(1), two counts of indecent exposure with a prior PC § 288 conviction, in violation of PC § 314(1), and one count of continuous sexual abuse ("Count Four") in violation of PC § 288.5.[2] (Appeal at 2.) The Amended Information additionally contained Special Allegations alleging that Petitioner was a habitual sexual offender pursuant to PC § 667.71, that Petitioner has committed a prior § 288 conviction and that Petitioner had two prior strikes pursuant to PC § 667(b)-(i). (Id.)

On March 10, 2003, Petitioner changed his plea from "not guilty" to "no contest" for Count Four, violation of PC § 288.5, pursuant to a plea bargain agreement, and additionally admitted the two strikes and a mandatory five-year consecutive § 667(a) enhancement. (Appeal at 2.) In exchange, the state dismissed all remaining charges and allegations against Petitioner. (Id.) Petitioner signed and initialed the plea agreement in several locations acknowledging that he had read and understood it. (Clerk's Transcript at 98-99, hereafter, "CT," Docket Item No. 9.) Specifically, he initialed the portion stating that he faced a minimum penalty of 25 years to life and a maximum penalty of 48 years to life. (Id. at 99.) He also initialed the portion stating the court would determine his sentence based on factors in mitigation and aggravation. (Id.) Before accepting the plea, the court ensured that Petitioner understood what it entailed, including the maximum possible term of imprisonment. (Reporter's Transcript, hereafter, "RT," Vol. 23 at 7-9, Docket Item No. 10.) Appointed Counsel Mervin Lernhart ("Lernhart") represented Petitioner at trial, while Retained Counsel Eric W. Conner ("Conner"), who continues to represent Petitioner, represented Petitioner at the pretrial proceedings and sentencing. (Petition at 4.)

On April 22, 2003, Lernhart filed a motion to withdraw Petitioner's guilty plea. (CT at 112-13.) The next day, Lernhart requested new counsel for Petitioner, since he did not feel that he could

---

[2] The charges were brought the Napa County Superior Court of California ("the trial court").

1 ethically advance the reasons set forth in the motion. (Appeal at 3.) On July 8, 2003, Petitioner's
2 newly retained counsel, Conner, filed a second motion to withdraw, based in part on an ineffective
3 assistance of counsel claim. (CT at 132.) On July 21, 2003, the trial court denied the motion. (CT
4 at 152.) On August 27, 2003, the trial court sentenced Petitioner to the upper indeterminate term of
5 48 years to life with the additional 5 year consecutive sentence. (CT at 173-74.) The court imposed
6 the upper term after finding exactly one aggravating factor, Petitioner's past unsatisfactory
7 performance while on parole, and no mitigating factors. (RT, Vol. 28 at 18-19.)

**B.     Case History**

On October 24, 2003, Petitioner made an application to the trial court for a Certificate of Probable Cause, indicating that his appeal was not frivolous. (Petition at 8.) The court granted Petitioner's application on October 28, 2003. (Id.) On November 17, 2003, the Certificate of Probable Cause was filed in the Court of Appeal of the State of California, First District. (Id. ¶ 8.) On December 1, 2003, a petition for a writ of habeas corpus was consolidated with Petitioner's appeal at his request. (Appeal at 1.) On February 28, 2005, the California Court of Appeal affirmed the trial court's decision, and denied Petitioner's petition for a writ of habeas corpus, which became final on March 28, 2005. (Petition ¶ 8.) On April 29, 2005, the California Supreme Court denied Petitioner's petition for appellate review. (Id.) On May 28, 2005, the California Supreme Court denied Petitioner's separate petition for a writ of habeas of corpus. (Id.)

### III.  STANDARDS

Petitioner filed his Petition for Writ of Habeas Corpus in this Court on October 27, 2006. Accordingly, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which imposes a "new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." Williams v. Taylor, 529 U.S. 362, 412 (2000).

Under the AEDPA, a district court may entertain a petition for writ of habeas corpus "on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §

2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court proceedings unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." Williams, 529 U.S. at 412; Lockyer v. Andrade, 538 U.S. 63, 71 (2003); see Alvarado v. Hill, 252 F.3d 1066, 1068-69 (9th Cir. 2001). Section 2254(1) "restricts the source of clearly established law to [the Supreme] Court's jurisprudence." Williams, 529 U.S. at 412.

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, at 412-13. "Under the 'reasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, at 411. The objectively unreasonable standard is not a clear error standard. See Andrade, 538 U.S. at 75 (rejecting the Ninth Circuit's use of clear error standard in Van Tran v. Lindsey, 212 F.3d 1143 (9th Cir. 2000)). Conflating the "objectively unreasonable" standard with the "clear error" standard "fails to give proper deference to state courts." Id. After Andrade, "[t]he writ may not issue simply

4

because, in [the federal habeas court's] determination, a [s]tate court's application of federal law was erroneous, clearly or otherwise." Id. at 75-76.

A federal habeas court may also grant the writ if it concludes that the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts occurs where the state court fails to consider and weigh highly probative, relevant evidence, central to the petitioner's claim, that was properly presented and made part of the state-court record. See Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004). A district court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. See Sumner v. Mata, 449 U.S. 539, 546-47 (1981); Bragg v. Galaza, 242 F.3d 1082, 1087 (9th Cir. 2001), amended by 253 F.3d 1150 (9th Cir. 2001).

Finally, habeas relief is warranted only if the constitutional error at issue is a structural error or had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)). Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual" prejudice. Brecht, 507 U.S. at 637.

Where, as in this writ, the California Supreme Court denies review of Petitioner's claim without explanation, the Court looks to the last reasoned state court decision in conducting habeas review. See Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (citation omitted) (the district court "looks through" the unexplained California Supreme Court decision to the last reasoned state court decision), cert. denied, 534 U.S. 944 (2001). The California Court of Appeal rendered the last reasoned state court decision in Petitioner's case.

5

## IV.  DISCUSSION

Petitioner seeks review of the Court of Appeal's decision on three grounds:  (1) Petitioner's guilty plea was not knowing, voluntary and intelligent in violation of his Fifth and Fourteenth Amendment right to due process; (2) Petitioner's guilty plea was the result of ineffective assistance of counsel in violation of his Sixth Amendment right to counsel; and (3) Petitioner's sentence is based on an aggravating factor that was not found by a jury in violation of his Sixth Amendment right to a jury trial.  The Court considers each issue in turn.

### A.  Petitioner's Guilty Plea

Petitioner contends that his guilty plea was not knowing, voluntary and intelligent in violation of his Fifth and Fourteenth Amendment right to due process and that his guilty plea was the result of ineffective assistance of counsel in violation of his Sixth Amendment right to counsel.

A defendant who pleads guilty may not collaterally challenge a voluntary and intelligent guilty plea entered into with the advice of competent counsel.  United States v. Broce, 488 U.S. 563, 574 (1989); Mabry v. Johnson, 467 U.S. 504, 508 (1984).  Nor may he collaterally attack his plea's validity merely because he made what turned out, in retrospect, to be a poor deal.  Bradshaw v. Stumpf, 545 U.S. 175, 186 (2005).  The only challenges left open in federal habeas corpus after a guilty plea is the voluntary and intelligent character of the plea and the nature of the advice of counsel to plead.  Hill v. Lockhart, 474 U.S. 52, 56-57 (1985); Tollett v. Henderson, 411 U.S. 258, 267 (1973).  A defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases.  Tollett, 411 U.S. at 267; Lambert v. Blodgett, 393 F.3d 943, 979 (9th Cir. 2004); United States v. Signori, 844 F.2d 635, 638 (9th Cir. 1988).

Thus, although Petitioner challenges the validity of his guilty plea by alleging separate violations of his right to due process and right to counsel, the Court must examine the state court's

1 adjudication of the validity of Petitioner's guilty plea under the rubric of his Sixth Amendment right
2 to counsel. See Lambert, 393 F.3d at 979.

3 Petitioner alleges that his guilty plea was not voluntary, knowing and intelligent because he
4 was not informed by counsel that his unsatisfactory performance on parole could subject him to the
5 highest potential term of 48 years to life. (Petition at 10-11.) Petitioner contends that "[a]lthough
6 [he] was advised that he could receive the aggravated term [of 48 years to life], he believed he also
7 had a chance to receive the lower term of 25 years to life." (Id. at 10.) However, according to
8 Petitioner, his sentence of 48 years to life, the highest possible sentence under his plea agreement,
9 was a direct consequence of his plea which was never explained to him by counsel. (Id. at 10-11.)

10 Due process requires that a guilty plea be both knowing and voluntary because it constitutes
11 the waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers,
12 and the privilege against self-incrimination. See Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).
13 It does not, however, require a state court to enumerate all the rights a defendant waives when he
14 enters a guilty plea as long as the record indicates that the plea was entered voluntarily and
15 understandingly. See Rodriguez v. Ricketts, 798 F.2d 1250, 1254 (9th Cir. 1986), cert. denied, 479
16 U.S. 1057 (1987).

17 A habeas petitioner bears the burden of establishing that his guilty plea was not knowing and
18 voluntary. See Parke v. Raley, 506 U.S. 20, 31-34. The long-standing test for determining the
19 validity of a guilty plea is "'whether the plea represents a voluntary and intelligent choice among the
20 alternative courses of action open to the defendant.'" Id. at 29 (quoting North Carolina v. Alford,
21 400 U.S. 25, 31 (1970)). Of particular importance is that the defendant enter a guilty plea with
22 sufficient awareness of the relevant circumstances and likely consequences, and that he understand
23 the law in relation to the facts. See Brady v. U.S., 397 U.S. 742, 748 (1970); McCarthy v. United
24 States, 394 U.S. 459, 466-67 (1969).

25 A plea is "unintelligent" if the defendant is without the information necessary to assess "the
26 advantages and disadvantages of a trial as compared with those attending a plea of guilty." Brady,
27
28

7

397 U.S. at 754. A plea is involuntary unless it is "entered by one fully aware of the direct consequences" of the plea. Id. at 755; see Carter v. McCarthy, 806 F.2d 1373, 1375 (9th Cir. 1986), cert. denied, 484 U.S. 870 (1987). A failure to inform a defendant of the direct consequences of a guilty plea may therefore render a plea involuntary. See, e.g., United States v. Neely, 38 F.3d 458, 461 (9th Cir. 1994); cf. United States v. Littlejohn, 224 F.3d 960, 971 (9th Cir. 2000). Thus, a defendant must be advised of the range of allowable punishment that will result from his plea. Torrey v. Estelle, 842 F.2d 234, 235 (9th Cir. 1988); United States ex rel. Pebworth v. Conte, 489 F.2d 266, 267 (9th Cir. 1974).

Although a defendant is entitled to be informed of the direct consequences of the plea, there is no violation of due process where the court or the defendant's counsel fail to inform the defendant of "all possible collateral consequences." See Torrey, 842 F.2d at 235-37. The distinction between a direct and collateral consequence of a plea turns on whether the result presents a definite, immediate and largely automatic effect on the range of the defendant's punishment. See id. at 236. For example, under this standard, direct consequences include a mandatory special parole term, United States v. Harris, 534 F.2d 141 (9th Cir. 1976), ineligibility for parole, Munich v. United States, 337 F.2d 356, 361 (9th Cir. 1964), overruled on other grounds by Heiden v. U.S., 353 F.2d 53 (9th Cir. 1965), the maximum punishment provided by law, United States ex rel. Pebworth, 489 F.2d at 267, and the ineligibility for federal social security and food stamp benefits, Littlejohn, 224 F.3d at 966. In contrast, collateral consequences include the fact that the defendant would have to submit to a psychiatric panel prior to release on parole, Bargas v. Burns, 179 F.3d 1207, 1216 (9th Cir. 1999), the possibility that sentences may run consecutively, United States v. Rubalcaba, 811 F.2d 491, 494 (9th Cir. 1987), the possibility of revocation of parole, Sanchez v. United States, 572 F.2d 210, 211 (9th Cir. 1977), the possibility of a sentence enhancement based on the guilty plea, United States v. Garrett, 680 F.2d 64, 65-66 (9th Cir. 1982), potential deportation, Fruchtman v. Kenton, 531 F.2d 946, 949 (9th Cir. 1976), civil tax liability, United States v. King, 618 F.2d 550, 553 (9th Cir. 1980), the likelihood of an undesirable military discharge, Redwine v. Zuckert, 317

1  F.2d 336 (D.C. Cir. 1963), and the potential for civil commitment proceedings, George v. Black, 732

2  F.2d 108, 111 (8th Cir. 1984).

3  When determining whether a plea was not voluntary, knowing and intelligent due to
4  ineffective assistance of counsel, a court must apply the Supreme Court's two-part test for
5  evaluating ineffective assistance of counsel claims. Torrey, 842 F.2d at 237. First, the defendant
6  "must show that counsel's performance was deficient." Strickland v. Washington, 466 U.S. 668,
7  687 (1984). Second, the defendant "must show that the deficient performance prejudiced the
8  defense." Id. at 687. "Review of counsel's performance is highly deferential and there is a strong
9  presumption that counsel's conduct fell within the wide range of reasonable representation." United
10 States v. Ferreira-Alameda, 815 F.2d 1251, 1253 (9th Cir. 1986). An attorney's incorrect prediction
11 as to the likely sentence following a guilty plea does not amount to erroneous advice, or satisfy the
12 deficiency prong of Strickland, simply because the trial court ultimately imposed a longer sentence.
13 Womack v. Del. Papa, 497 F.3d 998, 1002-03 (9th Cir. 2007). Where the defendant was informed
14 prior to entering his guilty plea of the potential sentence he could receive, he cannot establish
15 prejudice from counsel's incorrect prediction as to his sentence. Id. at 1003-04. In order to establish
16 ineffective assistance from counsel's inaccurate prediction regarding the likely sentence following a
17 guilty plea, petitioner must establish a "'gross mischaracterization of the likely outcome' of a plea
18 bargain 'combined with . . . erroneous advice on the probable effects of going to trial.'"
19 Sophanthavong v. Palmateer, 378 F.3d 859, 868 (9th Cir. 2004); see also Weaver v. Palmateer, 455
20 F.3d 958, 966-69 (9th Cir. 2006).

21 Here, the California Court of Appeal made two findings concerning Petitioner's guilty plea.
22 First, the Court of Appeal found as follows:

> The record shows [Petitioner] was advised the trial court would determine his sentence from among a lower, middle or upper term, based on mitigating and aggravating factors. . . . [T]he trial court's selection of the upper term based solely on Tevlin's parole performance did not inexorably follow from [Petitioner's] conviction and thus was not a direct consequence. Instead, it was a result of the trial court's exercise of discretion after it considered numerous possible circumstances in mitigation and aggravation proffered by [Petitioner], the People, and the probation officer.

9

(Court of Appeal at 3-4.) Second, assuming that Petitioner's lawyer failed to inform him that his prior unsatisfactory performance while on parole would effect his sentencing, the Court of Appeal found as follows:

> There is no objective evidence Tevlin would have gone to trial had he known the parole performance factor could subject him to the upper term. He already knew he faced a possible sentence of 48 years to life and that the court would consider aggravating circumstances–these were both terms of his plea agreement. The record does not establish that there was a reasonable probability he would have received a shorter sentence had he gone to trial. . . .
>
> There is no objective evidence Tevlin would have gone to trial had he known the parole performance factor could subject him to the upper term.

(Appeal at 6.)

As to the deficiency prong of the <u>Strickland</u> test, the record indicates that the trial court questioned Petitioner as follows at the submission of his guilty plea:

> The Court: I do have a plea form here that I would like to ask you some questions about, Mr. Tevlin.
>
>  . . .
>
> Defendant: Yeah, those are my signatures.
>
> The Court: Your signature and your initials?
>
> Defendant: Yes, sir.
>
> The Court: Have you had a chance to look at this form with your lawyer?
>
> Defendant: Well, I didn't really read it, but he did explain to me what is going on with it.
>
> The Court: I need you to be sure about this, so I will give it back to you and make sure you go over this with Mr. Lernhart and you understand everything on it, where you put your initials and signatures.
>
>  . . .
>
> Defendant: I understand these now, your Honor.
>
> The Court: So you have had a chance to review this form with Mr. Lernhart to your satisfaction, sir?
>
> Defendant: Yes, sir.
>
>  . . .

| | | |
|---|---|---|
| 1<br>2 | The Court: | If you enter these pleas, you will be going to state prison, and that you had a full explanation with Mr. Lernhart as to the possible choices of the maximum term of imprisonment; is that right? |
| 3 | Defendant: | Yes, sir. . . . |

(RT, Vol. 23 at 7-9.) Further, the plea agreement signed and initialed by Petitioner states that he would be subject to one of the three sentences enumerated in the plea agreement, including the maximum sentence of 48 years to life. (CT at 99.) The trial judge ultimately had discretion as to which sentence Petitioner would receive based on any aggravating and mitigating factors. See People v. Scott, 9 Cal. 4th 331, 349-50 (Cal. 1994). Thus, the California Court of Appeals correctly found that Petitioner had been informed of the range of sentences, and that his receipt of the maximum sentence was not a direct consequence of his guilty plea. As such, Petitioner has failed to show that his counsel's performance was deficient.

With respect to the prejudice prong of the Strickland test, the California Court of Appeal properly found that there is no evidence in the record indicating that Petitioner would have gone to trial had he been informed that his unsatisfactory performance while on parole could subject him to the maximum sentence. (Appeal at 6.) In light of federal law placing the burden on Petitioner to establish ineffective assistance of counsel, the Court of Appeal's decision regarding prejudice was not contrary to clearly established law nor based on an unreasonable determination of facts.

Accordingly, Petitioner is not entitled to habeas relief on this claim.

**B.    Right to a Jury Trial**

Petitioner contends that his Sixth Amendment right to a jury trial was violated because he "did not admit, nor did a jury find beyond a reasonable doubt, that petitioner had previously performed unsatisfactorily while on parole." (Petition at 13-14.) Thus, according to Petitioner, the trial court did not have authority to sentence him to the maximum term of 48 years to life. (Id.)

Under the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).

11

1  The "statutory maximum" for <u>Apprendi</u> purposes is the maximum sentence a judge could impose
2  based solely on the facts reflected in the jury verdict or admitted by the defendant; that is, the
3  relevant "statutory maximum" is not the sentence the judge could impose after finding additional
4  facts, but rather is the maximum he or she could impose without any additional findings. <u>Blakely v.</u>
5  <u>Washington</u>, 542 U.S. 296, 303-04 (2004). A defendant, however, is not entitled to a jury finding
6  on facts to which he has admitted. <u>See id.</u> at 303. Further, failure to submit a sentencing factor to
7  the jury, like failure to submit an element to the jury, is not structural error; therefore, it is subject to
8  harmless-error analysis. <u>Washington v. Recuenco</u>, 548 U.S. 212, 221-22 (2006). "[B]efore a federal
9  constitutional error can be held harmless, the court must be able to declare a belief that it was
10 harmless beyond a reasonable doubt." <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 630 (U.S. 1993)
11 (internal quotations omitted). The State bears the burden of proving that an error passes muster
12 under this standard. (<u>Id.</u>)
13      In <u>Cunningham v. California</u>, 549 U.S. 270, 293 (2007), the Supreme Court found that
14 California's determinate sentencing law (DSL) resembled the sentencing scheme invalidated in
15 <u>Booker</u>; therefore, the Court's decisions from <u>Apprendi</u> to <u>Booker</u> pointed to the middle term
16 specified in California's statutes, not the upper term, as the relevant statutory maximum. The DSL
17 violated <u>Apprendi</u>'s bright line rule because circumstances in aggravation are found by the judge,
18 not the jury, and need only be established by a preponderance of the evidence, not beyond a
19 reasonable doubt. <u>Id.</u> at 288. Contrary to the California Supreme Court's holding in <u>People v.</u>
20 <u>Black</u>, 35 Cal. 4th 1238, 1254-61 (2005), the Court concluded that the DSL does not resemble the
21 advisory system the <u>Booker</u> Court had before it because, under California's system, judges are not
22 free to exercise their "discretion to select a specific sentence within a defined range."[3] <u>Cunningham</u>,

---

[3] California's Legislature adopted sentencing triads, three fixed sentences with no ranges between them. <u>Cunningham</u>, 549 U.S. at 292. In <u>Cunningham</u>, the sentencing judge had no discretion to select a sentence within a range of six to sixteen years because his instruction was to select twelve years, nothing less and nothing more, unless he found facts allowing the imposition of a sentence of six to sixteen years. <u>Id.</u> The Court found that factfinding to elevate a sentence from twelve to sixteen years fell "within the province of the jury employing a beyond-a-reasonable-doubt standard, not the bailiwick of a judge determining where the preponderance of the evidence lies."

12

549 U.S. at 292 (quoting Booker, 543 U.S. at 233).  The Court found unavailing the Black court's attempt to rescue the DSL's judicial factfinding authority by typing it a reasonableness constraint, equivalent to the constraint operative in the post-Booker federal system.  Id. at 291-92.  The Court made clear that reasonableness is not the touchstone of Sixth Amendment analysis.  Id.  The reasonableness requirement Booker anticipated for the federal system operates within the Sixth Amendment constraints delineated in the Supreme Court's precedent, not as a substitute for those constraints.  Id.  Therefore, the Supreme Court held that the DSL violated the Sixth Amendment because it allocated to judges sole authority to find facts permitting the imposition of an upper term sentence.  Id. at 293.

In Petitioner's case, the California Court of Appeal issued their decision prior to the Supreme Court's decision in Cunningham.[4]  However, the Court of Appeal, assuming Petitioner was entitled to a jury on the issue of his unsatisfactory parole performance, found as follows:

> The trial court's selection of the upper term on the basis of [Petitioner's] parole performance did not run afoul of Blakley because [Petitioner] admitted his performance was unsatisfactory and that it was an aggravating factor for sentencing purposes.  In the sentencing memorandum [Petitioner's] counsel filed with the trial court, he lists as a circumstance in aggravation that [Petitioner's] "performance on parole was not satisfactory, as he was returned to custody in 1995."  Nothing prevented [Petitioner] from waiving his Apprendi/Blakley rights by stipulating to these facts.

(Appeal at 11 (internal citations omitted).)  The Court of Appeal also found that if Petitioner's prior parole performance was erroneously used as the basis for sentencing him to the maximum of 48 years to life, such an error was harmless.

> We agree with the Attorney General that even if the trial court committed a Blakely error in failing to submit the issue of [Petitioner's] parole performance to a jury, the error was harmless beyond a reasonable doubt and thus not reversible. . . .  We have no doubt a jury would have found [Petitioner's] performance on parole was unsatisfactory.  First, as discussed *supra*, [Petitioner] admitted his performance on parole was unsatisfactory.  Second, the record shows he was sent back to prison for

---

Id.

[4] Respondent contends that Cunningham does not apply to this petition because it announced a new federal law that cannot be applied retroactively.  (Memorandum of Points and Authorities in Support of Answer to Petition for Writ of Habeas Corpus at 15, Docket Item No. 6.)  However, for the reasons discussed below, the Court need not reach this issue.

13

> one year for his parole violation. Consequently, it could not have been reversible error for the trial court to rely on this aggravating circumstance without submitting it to a jury.

(Appeal at 11-12 (internal citations omitted).) With respect to Petitioner's admission, the California Court of Appeal correctly found that Petitioner had admitted his unsatisfactory performance on parole, and recognized that it could be used as an aggravating factor in his sentencing. (CT at 157.) Petitioner's unsatisfactory performance is also apparent from his probation report, which shows that Petitioner returned to prison in 1995 for violating his parole. (CT at 161-63.) As such, there were adequate grounds in the record for the Appellate Court to find that any error was harmless beyond a reasonable doubt. Thus, the Court finds that the Court of Appeal did not unreasonably apply federal law with respect to Petitioner's claim that he was deprived his Sixth Amendment right to a jury trial.

Accordingly, Petitioner is not entitled to habeas relief on this claim.

## V. CONCLUSION

The Court DENIES the Petition for Writ of Habeas Corpus as to all grounds. Judgment shall be entered accordingly.

Dated: December 18, 2009

JAMES WARE
United States District Judge

14

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Eric W. Conner rayrobnsn@hotmail.com
Sharon R. Wooden sharon.wooden@doj.ca.gov
Stanley Gail Trujillo ray@ericconner.com

**Dated: December 18, 2009**                    **Richard W. Wieking, Clerk**

                                                **By:  /s/ JW Chambers**
                                                     **Elizabeth Garcia**
                                                     **Courtroom Deputy**